# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| ROBERT RESCHKE, | ) |
| Plaintiff, | ) |
| | ) Case No. 1:14-cv-04656 |
| vs. | ) Hon. Judge Marvin E. Aspen |
| | ) |
| PACTIV, LLC, | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

MARVIN E. ASPEN, District Judge:

Presently before us is Defendant Pactiv's motion to dismiss Counts IV and V of Plaintiff Robert Reschke's complaint, filed pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6). For the reasons stated below, we grant Defendant's motion.

## BACKGROUND

In 1992, Plaintiff began working as a Finishing Manager for Dopaco, Inc., and was promoted to Plant Manager in 1998. (Compl. at Count IV ¶¶ 9, 12.) In July 2000, Plaintiff entered into an "Employment Stay Bonus and Severance Agreement" (the "Dopaco Agreement") with Dopaco. (*Id.* at Count IV ¶ 11, Ex. C.) The Dopaco Agreement as amended provides that in the event of a "Change of Control" or of Plaintiff's termination for "Good Reason" or "Without Cause," Plaintiff could receive severance pay equal to 100% of his "Two Year Average Compensation," plus benefits. (*Id.* at Count IV ¶ 14.)

Defendant acquired Dopaco on May 20, 2011, through a stock purchase agreement. (*Id.* at Count IV ¶ 12.) Plaintiff alleges that the acquisition bound Defendant to the Dopaco Agreement. (*Id.* at Count IV ¶ 13.) In April 2012, Defendant changed the bonus structure that

1

had entitled Plaintiff to a bonus for the prior fifteen years. (*Id.* at Count IV ¶¶ 16–18.) Plaintiff alleges that because this change resulted in a permanent reduction of his compensation, he elected to exercise his severance option under the Dopaco Agreement. (*Id.* at Count IV ¶ 19.) Plaintiff further claims that Defendant "terminated [him] by leading him to believe a severance payment would be made" pursuant to the Dopaco Agreement, but then refused to pay him the severance compensation. (*Id.* at Count IV ¶¶ 22–25.)

Plaintiff initially filed charges with the United States Equal Employment Opportunity Commission ("EEOC") and the Illinois Department of Human Rights ("IDHR"). (Resp. at 2.) The EEOC issued a right to sue letter on March 24, 2014. (*Id.*) Thereafter, Plaintiff filed his five-count complaint on June 19, 2014, alleging that Defendant: (1) discriminated against him because of his age when it terminated his employment without severance pay in violation of the Age Discrimination in Employment Act ("ADEA"), and the Illinois Human Rights Act (Counts I and II); (2) breached its obligations under the Dopaco Agreement (Count III); (3) made fraudulent misrepresentations to induce him to elect his severance option (Count IV); and (4) negligently misrepresented that he would be entitled to severance pay (Count V). (*See* Compl.) Defendant answered Counts I, II, and III, and moved to dismiss Counts IV and V. (Resp. at 2.) For both Counts IV and V, Plaintiff seeks damages of 100% of his two-year average compensation, in addition to life insurance, medical insurance, and disability insurance for one year. (Compl. at Count IV ¶ 26; Count V ¶ 32.)

## STANDARD OF REVIEW

A motion to dismiss under Rule 12(b)(6) is meant to test the sufficiency of the complaint, not to decide the merits of the case. *Gibson v. City of Chi.*, 910 F.2d 1510, 1520 (7th Cir. 1990). To survive a motion to dismiss, the complaint must contain a "short and plain statement of the

claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Specifically, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009) (citing *Bell Atl. Corp. v. Twombly*, 540 U.S. 544, 555, 127 S. Ct. 1955, 1964–65 (2007)). The plausibility standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* Thus, while a complaint need not give "detailed factual allegations," it must provide more than "labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Twombly*, 540 U.S. at 545, 127 S. Ct. at 1964–65; *Killingsworth v. HSBC Bank Nevada, N.A.*, 507 F.3d 614, 618–19 (7th Cir. 2007). The statement must be sufficient to provide the defendant with "fair notice" of the claim and its basis. *Twombly*, 540 U.S. at 545, 127 S. Ct. at 1964 (quoting *Conley v. Gibson*, 355 U.S. 41, 47, 78 S. Ct. 99, 102 (1957)); *Tamayo v. Blagojevich*, 526 F.3d 1074, 1083 (7th Cir. 2008). In evaluating a motion to dismiss, we must accept all well-pleaded allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Thompson v. Ill. Dep't of Prof'l Reg.*, 300 F.3d 750, 753 (7th Cir. 2002).

## DISCUSSION

Defendant argues that Plaintiff's claims of fraudulent misrepresentation (Count IV) and negligent misrepresentation (Count V) should be dismissed. As set forth below, we grant Defendant's motion because Plaintiff's complaint does not meet the heightened pleading standard for fraudulent misrepresentation, and because his negligent misrepresentation claim is barred by the *Moorman* doctrine.

### A.    Fraudulent Misrepresentation (Count IV)

Plaintiff claims that Defendant made fraudulent misrepresentations to induce him into electing his severance option. (Compl. at Count IV ¶ 22.) A claim for fraud must include the

following elements: "(1) a false statement of material fact; (2) defendant's knowledge that the statement was false; (3) defendant's intent that the statement induce the plaintiff to act; (4) plaintiff's reliance upon the truth of the statement; and (5) plaintiff's damages resulting from reliance on the statement." *Tricontinental Indus., Ltd. v. PricewaterhouseCoopers, LLP*, 475 F.3d 824, 841 (7th Cir. 2007) (citing *Connick v. Suzuki Motor Co., Ltd.*, 174 Ill. 2d 482, 496, 675 N.E.2d 584, 591 (Ill. 1996)).

Additionally, Federal Rule of Civil Procedure 9(b) requires plaintiffs who assert fraud claims to "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). To satisfy the particularity requirement, an allegation of fraud must include the "who, what, when, where, and how: the first paragraph of any newspaper story." *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990); *accord Borsellino v. Goldman Sachs Grp., Inc.*, 477 F.3d 502, 507 (7th Cir. 2007); *Hoffman v. Nationwide Mut. Ins. Co.*, No. 10 C 3841, 2011 WL 3158708, at *3 (N.D. Ill. July 26, 2011). Although Rule 9(b) does not require the plaintiff to plead facts sufficient to prove that the alleged misrepresentations were false, it does require the plaintiff to state "the identity of the person making the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff." *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 737 (7th Cir. 2014) (quoting *Uni*Quality, Inc. v. Infotronx, Inc.*, 974 F.2d 918, 923 (7th Cir. 1992) (citations omitted)).[1]

In his complaint, Plaintiff asserts that Defendant made "false and fraudulent representations" relating to his severance pay. (Compl. at Count VI ¶ 26.) This conclusory allegation does not meet the heightened pleading standard for fraud. Plaintiff fails to allege any specific facts to support the elements of fraud, such as: who made the alleged misrepresentation,

---

[1] Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally. *See* Fed. R. Civ. P. 9(b).

the content of the misrepresentation, when and where Defendant made the misrepresentation, or the means of communication through which Plaintiff received the misrepresentation. The closest thing to the required allegations is Plaintiff's assertion that "[Defendant] terminate[d] [Plaintiff] by leading him to believe a severance payment would be made and then denied him the compensation after terminating his employment." (Compl. at Count VI ¶ 22.) But again, Plaintiff does not describe what Defendant said to deceive him, who said it, when it was said, where, or through what means. In his Response, Plaintiff reiterates the five prima facie elements required for a fraud claim, but does not add any facts or details to bolster his complaint. (*See* Resp. at 6–8.) Since Plaintiff failed to provide sufficient facts for us to determine that his allegations of fraud are "responsible and supported, rather than defamatory and extortionate," he has not satisfied the Rule 9(b) particularly requirement. *Ritacca v. Storz Med., A.G.*, 291 F.R.D. 176, 180 (N.D. Ill. 2013) (quoting *Ackerman v. Nw. Mut. Life Ins. Co.*, 172 F.3d 467, 469 (7th Cir. 1999)). Therefore, Defendant's motion to dismiss Count IV is granted without prejudice.

**B.      Negligent Misrepresentation (Count V)**

In Count V, Plaintiff claims that Defendant negligently misrepresented to Plaintiff that he was entitled to severance pay and benefits in order to induce him into electing his severance package option. He further alleges that as a result of Defendant's negligent conduct, he lost economic compensation and insurance benefits. The Illinois Supreme Court's decision in *Moorman Mfg. Co. v. Nat'l Tank Co.* established the economic loss doctrine in Illinois. 91 Ill. 2d 69, 88, 435 N.E.2d 443, 451–52 (Ill. 1982); *see Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 567 (7th Cir. 2012). The *Moorman* doctrine generally prohibits recovery of economic losses under a tort theory to "a party whose complaint is rooted in disappointed contractual or

commercial expectations." *Banco del Estado v. Navistar Int'l Transp. Corp.*, 942 F. Supp. 1176, 1181 (N.D. Ill. 1996) (quoting *Collins v. Reynard*, 154 Ill. 2d 48, 54, 607 N.E.2d 1185, 1188 (Ill. 1992)); *see Wigod*, 673 F.3d at 567. Here, Plaintiff seeks damages for 100% of his two-year average compensation, as well as life, medical, and disability insurance for one year. (Compl. at Count V ¶¶ 14, 32.) These are purely economic damages from an alleged breach of contract that are typically not recoverable in tort.

Plaintiff argues, however, that an exception to the *Moorman* doctrine applies in his case. Under the relevant exception, "a plaintiff may pursue a negligent misrepresentation claim against a defendant who: (1) is 'in the business of supplying information;' and (2) provides 'this information for the guidance of others in their business relations with third parties.'" *LeDonne v. Axa Equitable Life Ins. Co.*, 411 F. Supp. 2d 957, 963 (N.D. Ill. 2006) (quoting *Gerdes v. John Hancock Mut. Life Ins. Co.*, 712 F. Supp. 692, 696 (N.D. Ill. 1989)); *see Rankow v. First Chicago Corp.*, 870 F.2d 356, 362–63 (7th Cir. 1989).

Under the first prong, the determination of whether an enterprise is in the business of supplying information requires a fact-specific inquiry to examine the nature of the business and the end product. *Rankow*, 870 F.2d at 361–64; *Gerdes*, 712 F. Supp. at 697. Illinois courts generally find that defendants who provide only information to their clients, such as accountants, real estate brokers, and stockbrokers, are "in the business of supplying information." *Hartford Fire Ins. Co. v. Henry Bros. Const. Mgmt. Servs., LLC,* 877 F. Supp. 2d 614, 620 (N.D. Ill. 2012); *Tolan & Son, Inc. v. KLLM Architects, Inc.*, 308 Ill. App. 3d 18, 28, 719 N.E.2d 288, 297 (1st Dist. 1999). At the other end of the spectrum, courts typically find that defendants who produce tangible products, such as manufacturers, are not "in the business of supplying information." *Dvore v. Casmay*, No. 6 C 3076, 2008 WL 4427467, at *7 (N.D. Ill. Sept. 29,

6

2008); *Tolan & Son*, 308 Ill. App. 3d at 28–29; *Fox Assoc., Inc. v. Robert Half Int'l, Inc.*, 334 Ill. App. 3d 90, 95, 777 N.E.2d 603, 607 (1st Dist. 2002); *see Rankow*, 870 F.2d at 364; *Hartford*, 877 F. Supp. 2d at 620–21. In short, if the defendant's end goal is to create a tangible product, then he does not meet the business of supplying information requirement. *See Hartford*, 877 F. Supp. 2d at 620; *Tolan & Son*, 308 Ill. App. 3d at 29.

The second prong of the exception requires the defendant to provide "information for the guidance of others in their business relations with third parties." *LeDonne*, 411 F. Supp. 2d at 963 (quoting *Gerdes*, 712 F. Supp. at 696). To satisfy this prong, the plaintiff must allege that he used the information supplied by the defendant to guide him in a business transaction with a third party. *Gerdes*, 712 F. Supp. at 698 (citing *Rankow*, 870 F.2d at 362–63).

Plaintiff does not fall under this exception to the *Moorman* doctrine because Defendant is not in the business of supplying information, nor did Defendant provide any information to Plaintiff that could be construed as guidance for Plaintiff's business relations with third parties. *LeDonne*, 411 F. Supp. 2d at 963 (quoting *Gerdes*, 712 F. Supp. at 696). Plaintiff's argument that Defendant is "in the unique position of supplying the information related to [Defendant]'s employee benefits and severance payments," (Resp. at 13), is a far-fetched interpretation of the *Moorman* exception. Although Defendant may supply benefit information to its employees, this human resources function is merely incidental to its primary manufacturing operations. *See Rankow*, 870 F.2d at 364; *Hartford*, 877 F. Supp. 2d at 620. Defendant is in the business of making paper cups. (Compl. at Count V ¶ 4.) Unlike pure information providers, manufacturers like Defendant do not produce information themselves, and are thus not "in the business of supplying information." *Hartford*, 877 F. Supp. 2d at 620; *see also Gen. Elec. Capital, Corp. v. Equifax Servs., Inc.*, 797 F. Supp. 1432, 1442 (N.D. Ill. 1992). Additionally, even if Defendant

was an information supplier, information about employee benefits and severance payments would not have been for the "guidance of [Plaintiff] in [his] business relations with third parties." *LeDonne*, 411 F. Supp. 2d at 963 (quoting *Gerdes*, 712 F. Supp. at 696). Therefore, Defendant's motion to dismiss Count V is granted with prejudice.

## CONCLUSION

For the reasons set forth above, Defendant's motion to dismiss Counts IV and V is granted. Count IV is dismissed without prejudice, and Count V is dismissed with prejudice. It is so ordered.

_____
Marvin E. Aspen
United States District Judge

Dated: December 12, 2014
Chicago, Illinois