# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| ROBERT RESCHKE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 1:14 C 04656 |
| v. ) | Hon. Marvin E. Aspen |
| ) | |
| PACTIV, LLC, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

MARVIN E. ASPEN, District Judge:

On June 19, 2014, Plaintiff Robert Reschke filed a five-count complaint against his former employer, Defendant Pactiv, LLC. Defendant filed a partial motion to dismiss, which we granted on December 12, 2014. (Dkt. No. 22.) At that time, we dismissed Plaintiff's fraudulent misrepresentation claim (Count IV) without prejudice. Plaintiff then filed an amended Count IV on January 28, 2015. Presently before us is Defendant's motion to dismiss the amended Count IV, pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6). (Dkt. No. 27.)

For the reasons stated below, we deny Defendant's motion. We also order Plaintiff to file an amended complaint on or by August 31, 2015, synthesizing the original complaint and the amended Count IV, without making any further substantive changes.

## BACKGROUND

In 1992, Plaintiff began working as a Finishing Manager for Dopaco, Inc., and was promoted to Plant Manager in 1998. (Am. Count IV ¶ 9 (Dkt. No. 23).) In July 2000, Plaintiff entered into an "Employment Stay Bonus and Severance Agreement" (the "Dopaco Agreement") with Dopaco. (*Id.* ¶ 11 & Ex. C.) The Dopaco Agreement as amended provides that in the event

1

of a "Change of Control" or of Plaintiff's termination either for "Good Reason" or "Without Cause," Plaintiff could receive severance pay equal to 100% of his "Two Year Average Compensation," plus benefits. (*Id.* ¶ 14.)

Defendant acquired Dopaco on May 20, 2011, through a stock purchase agreement. (*Id.* ¶ 12.) Plaintiff alleges that the acquisition bound Defendant to the Dopaco Agreement. (*Id.* ¶ 13.) In April 2012, Defendant changed the bonus structure that had entitled Plaintiff to a bonus for the prior fifteen years. (*Id.* ¶¶ 16–18.) Plaintiff alleges that because this change resulted in a permanent reduction of his compensation, he elected to exercise his severance option under the Dopaco Agreement on June 23, 2013.[1] (*Id.* ¶ 19 & Ex. D.) Plaintiff claims that Defendant then used the exercise of his option to "terminate his employment, and to impose a departure date." (*Id.* ¶ 21.)

In his amended Count IV, Plaintiff claims that Defendant—through its agent Brian Bronson, Plaintiff's immediate supervisor—made fraudulent misrepresentations in an email to Plaintiff on June 27, 2013. (*Id.* ¶ 21.) Plaintiff alleges that in this email, sent after Plaintiff elected severance, Bronson proposed a last day of August 31, 2013 for Plaintiff with the intention of terminating his employment. According to Plaintiff, Bronson thus indicated that Defendant accepted Plaintiff's request for severance, while he also stated that Defendant needed to evaluate that request. (*Id.* ¶ 21 & Ex. E.) On July 18, 2014, Defendant's in-house counsel, Steven Karl, sent an email to Plaintiff indicating that Defendant would take a few weeks to undertake a legal review to determine whether Defendant assumed the contract with Dopaco. (*Id.* ¶ 23 & Ex. F.) In that email, Karl explicitly stated that Plaintiff would "get an answer before [his] last day." (*Id.*, Ex. F.)

---

[1] The letter itself is dated June 24, 2013, but we will use the date as alleged in the amended complaint.

2

Based on these facts, Plaintiff claims that Defendant conspired to defraud Plaintiff and induced him into accepting the unilaterally imposed last day of employment date. (*Id.* ¶¶ 25, 39.) Plaintiff further alleges that Defendant intentionally stalled and waited until after his departure to tell Plaintiff that it had no intention of paying him the severance package. (*Id.* ¶ 25.) Plaintiff claims that if Defendant told him the "truth" (i.e., that it would not pay him the severance package), he would have withdrawn the election to take the severance package and remained employed with Defendant. (*Id.* ¶¶ 29–30.) Plaintiff claims he was "unaware of the true facts" and reasonably relied on the representations of Defendant. (*Id.* ¶ 38.) As damages for Defendant's allegedly fraudulent conduct, Plaintiff seeks 100% of his two-year average compensation, in addition to life insurance, medical insurance, and disability insurance for one year. (*Id.* ¶ 41.)

## STANDARD OF REVIEW

A motion to dismiss under Rule 12(b)(6) is meant "to test the sufficiency of the complaint, not to decide the merits" of the case. *Gibson v. City of Chi.*, 910 F.2d 1510, 1520 (7th Cir. 1990) (quoting *Triad Assocs., Inc. v. Chi. Hous. Auth.*, 892 F.2d 583, 586 (7th Cir. 1989)). To survive a motion to dismiss, the complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Specifically, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 540 U.S. 544, 570, 127 S. Ct. 1955, 1973 (2007)). The plausibility standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* Thus, while a complaint need not give "detailed factual allegations," it must provide more than "labels and conclusions, and a formulaic

recitation of the elements of a cause of action." *Twombly*, 540 U.S. at 555, 127 S. Ct. at 1964–65; *Killingsworth v. HSBC Bank Nevada, N.A.*, 507 F.3d 614, 618–19 (7th Cir. 2007); *see also Tamayo v. Blagojevich*, 526 F.3d 1074, 1083 (7th Cir. 2008). In evaluating a motion to dismiss, we must accept all well-pleaded allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Thompson v. Ill. Dep't of Prof'l Reg.*, 300 F.3d 750, 753 (7th Cir. 2002).

## ANALYSIS

Defendant argues that Plaintiff's amended claim of fraudulent misrepresentation (Count IV) should be dismissed for failure to state a claim and failure to do so with particularity. Under Illinois law, a claim for fraud must include the following elements: "(1) a false statement of material fact; (2) defendant's knowledge that the statement was false; (3) defendant's intent that the statement induce the plaintiff to act; (4) plaintiff's reliance upon the truth of the statement; and (5) plaintiff's damages resulting from reliance on the statement." *Tricontinental Indus., Ltd. v. PricewaterhouseCoopers, LLP*, 475 F.3d 824, 841 (7th Cir. 2007) (quoting *Connick v. Suzuki Motor Co., Ltd.*, 174 Ill. 2d 482, 496, 675 N.E.2d 584, 591 (Ill. 1996)).

Additionally, Federal Rule of Civil Procedure 9(b) requires plaintiffs who assert fraud claims to "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). To satisfy the particularity requirement, an allegation of fraud must include the "who, what, when, where, and how: the first paragraph of any newspaper story." *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990); *accord Borsellino v. Goldman Sachs Grp., Inc.*, 477 F.3d 502, 507 (7th Cir. 2007); *Hoffman v. Nationwide Mut. Ins. Co.*, 10 C 3841, 2011 WL 3158708, at *3 (N.D. Ill. July 26, 2011). Although Rule 9(b) does not require the plaintiff to plead facts sufficient to prove that the alleged misrepresentations were false, it does require the plaintiff to state "the identity of the person making the misrepresentation, the time, place, and content of the

misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff." *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 737 (7th Cir. 2014) (quoting *Uni\*Quality, Inc. v. Infotronx, Inc.*, 974 F.2d 918, 923 (7th Cir. 1992) (citations omitted)).

Based on our liberal reading of the amended complaint, we perceive that Plaintiff seeks to allege two separate but related misrepresentations. Plaintiff asserts that: (1) Defendant misrepresented through its conduct that it would pay him the severance package, (Am. Count IV ¶¶ 21, 25, 31–32, 35, 37); and (2) it misrepresented that it would inform him whether it would pay the severance prior to his departure date, (*id.* ¶¶ 21–25, 28–30, 35, 37). Plaintiff's allegations rest primarily on the specific written communications from Brian Bronson and Steven Karl, as well as on Defendant's purported stall tactics. (*Id.* ¶¶ 22, 25, 28–30.) We address below whether the allegations are adequate to state a claim under Illinois law.[2]

### A. Misrepresentation as to Payment of Severance

We begin by considering whether Plaintiff has stated a claim for fraudulent misrepresentation based on Defendant's statements to Plaintiff about whether he might receive severance. We conclude that he has not, for two reasons.[3]

First, Plaintiff has failed to allege that Defendant made any false statements of material fact as to his entitlement to severance under the Dopaco Agreement. Plaintiff notably has not alleged that anyone working for Defendant expressed to him, in any way, that he would receive

---

[2] These allegations, based on specific email communications, are sufficient to provide the "who, what, when, where, and how" details necessary to state a fraud claim with particularity. *DiLeo*, 901 F.2d at 627. The allegations thus satisfy Rule 9(b), and we need address only whether they sufficiently plead the elements of a fraud claim under Illinois law.

[3] In light of our holding, we need not address Defendant's argument that this claim also fails because it constitutes a claim for promissory fraud.

5

severance benefits upon leaving his employment.[4]  To the contrary, Plaintiff alleges that, in response to Plaintiff's June 23, 2013 letter, Bronson stated that Defendant would evaluate the severance request and would get back to Plaintiff.  (Am. Count IV ¶ 21 & Ex. E.)  Plaintiff further alleges that Karl explained to Plaintiff that he was undertaking a legal review to determine whether Defendant had adopted the obligations of the Dopaco Agreement and whether Plaintiff was entitled to severance thereunder.  (*Id.* ¶ 23 & Ex. F.)  Karl indicated that his review would take a few weeks and that Defendant would get back to Plaintiff prior to his departure.  (*Id.*)  In short, following Plaintiff's request for severance—which Defendant seemingly construed as a resignation—Defendant explicitly indicated in writing on two separate occasions that it had not yet decided whether Plaintiff would receive benefits.  Under the facts as alleged, Plaintiff's claim fails for lack of any misrepresentation that he was entitled to severance.

Second, even if Defendant's communications or conduct could be interpreted as a false statement of material fact, Plaintiff could not have justifiably relied upon it.  In assessing whether "reliance was justified, we must consider all of the facts that [Plaintiff] knew, as well as those facts [Plaintiff] could have learned through the exercise or ordinary prudence."  *Cozzi Iron & Metal, Inc. v. U.S. Office Equipment, Inc.*, 250 F.3d 570, 574 (7th Cir. 2001); *Richelieu Foods, Inc. v. New Horizon Warehouse Distrib. Ctr., Inc.*, — F. Supp. 3d —, 2014 WL 4435823, at *8 (N.D. Ill. Sept. 9, 2014); *Schrager v. N. Cmty. Bank*, 328 Ill. App. 3d 696, 710, 767 N.E.2d 376, 386–87 (1st Dist. 2002).  We also bear in mind that "one is justified in relying upon the representations of another, without independent investigation, where the person to whom the representations are made does not have the same ability to discover the truth as the person

---

[4] Although Plaintiff alleges that Defendant's response to his request for severance constituted acceptance of the obligations of the Dopaco Agreement, (Am. Count IV ¶ 21), that allegation is a legal conclusion and cannot be considered.

6

making the representations." *Schrager*, 328 Ill. App. 3d at 709, 767 N.E.2d at 386–87 (quoting *Gerill Corp. v. Hargove Builders, Inc.*, 128 Ill.2d 179, 195, 538 N.E.2d 530, 537 (1989)); *see Equity Builders & Contractors, Inc. v. Russell*, 406 F. Supp. 2d 882, 889 (N.D. Ill. 2005). The essential question "is whether, under the circumstances and in light of the information open to [Plaintiff], the law may properly say that the loss is his own responsibility." *Schrager*, 328 Ill. App. 3d at 709, 767 N.E.2d at 386 (internal quotation omitted); *Siegel Dev., LLC v. Peak Const. LLC*, 373 Ill. Dec. 482, 502, 993 N.E.2d 1041, 1061 (1st Dist. 2013); *see Richelieu Foods, Inc.*, 2014 WL 4435823, at *8; *Glass v. Kemper Corp.*, 949 F. Supp. 1341, 1347–48 (N.D. Ill. 1997). "Although reliance is normally a question of fact, it can be determined as a matter of law when no trier of fact could find that it was reasonable to rely on the alleged statements or when only one conclusion can be drawn." *Cozzi Iron & Metal, Inc.*, 250 F.3d at 574; *Siegel Dev., LLC*, 373 Ill. Dec. at 502, 993 N.E.2d at 1061.

Here, the allegations are so plain that we conclude, as a matter of law, that Plaintiff could not justifiably rely on Defendant's communications as the basis for his belief (and related conduct) that he would receive severance benefits. Plaintiff received two emails, from his supervisor and from inhouse counsel, informing him that his request for severance was subject to review. In light of this documentation, and under the circumstances allegedly known to him, Plaintiff could not have reasonably concluded that his severance was guaranteed. *Cozzi Iron & Metal, Inc.*, 250 F.3d at 574; *Richelieu Foods, Inc.*, 2014 WL 4435823, at *8; *see Glass*, 949 F. Supp. at 1350 (noting that defendant's written assertions rendered plaintiff's reliance on alleged oral promises unreasonable). Accordingly, Plaintiff cannot proceed with his fraud claim based on any alleged misrepresentation as to his entitlement to severance.

### B. Misrepresentation as to the Timing of the Decision about Severance

We turn next to evaluate Plaintiff's claim that Defendant made false statements of fact when it told him that it would look into his severance request and respond prior to his departure date. (*See* Resp. at 11.) As mentioned above, Bronson and Karl told Plaintiff that Defendant would research Plaintiff's request. In his July 18, 2013 email, Karl specifically told Plaintiff that he would get an answer about his severance claim before his last day. (Am. Count IV ¶¶ 21, 23 & Ex. E–F.) Plaintiff alleges that Defendant knew that this timing was important to Plaintiff, who would have continued his employment if he had known that his request would be denied. (*Id.* ¶¶ 24, 28–31, 35–37.) According to the complaint, Defendant knew Karl's statement was false at the time it was made, and Defendant deliberately delayed informing Plaintiff about the severance request in order induce him to leave even though it had no intention of paying severance benefits. (*Id.*) He states that he was unaware that Defendant would neither inform him about his request prior to his departure, nor pay the severance. (*Id.* ¶ 38.) Plaintiff alleges that he reasonably relied on Defendant's assertions in accepting the departure date, resulting in lost wages and benefits. (*Id.* ¶¶ 36, 38–39, 41.)

Although these allegations satisfy each element of fraudulent misrepresentation, *see Tricontinental Indus., Ltd.*, 475 F.3d at 841, Defendant contends that the claim nonetheless fails for two reasons. First, Defendant argues that Plaintiff's claim cannot stand because it constitutes a claim for promissory fraud, which is disfavored in Illinois. (Mem. at 5–8.) Second, Defendant contends that Plaintiff could not have justifiably and detrimentally relied on any alleged misrepresentations from Bronson or Karl, because he had already voluntarily resigned. (*Id.* at 8–9.) We address each argument below.

### *1. Promissory Fraud*

Defendant is correct that, in Illinois, "a misrepresentation as to a future promise or intent will not sustain an action for fraud." *Sommer v. United Sav. Life Ins. Co.*, 128 Ill. App. 3d 808, 813, 471 N.E.2d 606, 611 (2d Dist. 1984); *see also AAR Int'l Inc. v. Vacances Heliades S.A.*, 202 F. Supp. 2d 788, 798–799 (N.D. Ill. 2002). A narrow exception to this promissory fraud principle exists where the "promise is alleged to be part of a general scheme employed to accomplish the fraud." *Sommer*, 128 Ill. App. 3d at 814, 471 N.E.2d at 611; *Petrakopoulou v. DHR Int'l, Inc.*, 660 F. Supp. 2d 935, 938–38 (N.D. Ill. 2009); *see also HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc. et al.*, 131 Ill.2d 145, 168–169, 545 N.E.2d 672, 683 (1989). Nonetheless, "[p]romissory fraud is a disfavored cause of action in Illinois because fraud is easy to allege and difficult to prove or disprove." *Bower v. Jones*, 978 F.2d 1004, 1012 (7th Cir. 1992).

To prevent the exception from swallowing the rule, bald assertions that the defendant never intended to keep a promise are "insufficient to state a claim for promissory fraud." *Brdecka v. Gleaner Life Ins. Soc.*, 02 C 3076, 2002 WL 1949743, at *3 (N.D.Ill. Aug. 23, 2002); *see Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 570 (7th Cir. 2012). The burden of proof on a promissory fraud claim is "deliberately high," such that the plaintiff must plead "specific, objective manifestations of fraudulent intent—a scheme or device." *Bower*, 978 F.2d at 1012 (internal quotation omitted); *Wigod*, 673 F.3d at 570. Fraudulent intent may also be inferred "where the breach of promise happens so close to the promise that the only possible inference is that the promisor never intended to keep the promise." *Zic v. Italian Gov't Travel Office*, 130 F. Supp. 2d 991, 995 (N.D. Ill. 2001); *Dugas-Filippi v. JP Morgan Chase, N.A.*, 66 F. Supp. 3d 1079, 1091–92 (N.D. Ill. 2014); *AAR Int'l Inc.*, 202 F. Supp. 2d at 798–99.

Defendant's alleged misrepresentation that it would give Plaintiff a decision about his severance request prior to his departure date is clearly a promise for future conduct. Plaintiff thus asserts a promissory fraud claim and cannot proceed unless the claim falls within the "scheme or device" exception, whether because of the egregiousness, elaborateness, or timing of Defendant's conduct. *See Wigod*, 673 F.3d at 570; *Desnick v. Am. Broad. Cos., Inc.*, 44 F.3d 1345, 1354 (7th Cir. 1995); *Dugas-Filippi*, 66 F. Supp. 3d at 1091–92; *Zic*, 130 F. Supp. 2d at 995. Plaintiff suggests that he has sufficiently pled a scheme, involving both the misrepresentation and Defendant's refusal to pay his severance. (Am. Count IV ¶ 31; Resp. at 9–10.)

Drawing all reasonable inferences in Plaintiff's favor, as we must, we conclude that Plaintiff has stated an actionable claim for promissory fraud. Our conclusion rests primarily on the relatively close temporal proximity between Karl's promise on July 18, 2013 and the breach of that promise six weeks later when Plaintiff left his employment without a definite answer as to his severance question.[5] *See Am. Hardware Mfrs. Ass'n v. Reed Elsevier, Inc.*, 03 C 9421, 2004 WL 3363844, at *6 (N.D. Ill. Dec. 28, 2004) (inferring intent in a promissory fraud action where defendant breached promises "just over a month" after making them); *compare AAR Int'l Inc.*, 202 F. Supp. 2d at 798–99 (inferring intent where "promises were broken seven days later"), *with Sa'Butter Health & Med. P.C. v. Tap Pharm., Inc.*, 03 C 4074, 2001 WL 1510023, at *4–5 (N.D. Ill. July 2, 2004) (concluding that the "passage of several months" was too long to support an inference of fraud); *Zic*, 130 F. Supp. 2d at 995–96 (similarly finding that a lapse of one year was too long to draw an inference in plaintiff's favor). Plaintiff has plausibly pled, with

---

[5] Plaintiff has not alleged when Defendant told him, after his separation, that it would not pay his requested severance benefits. That timing may, or may not, further support Plaintiff's fraud claim.

sufficient particularity, that Defendant intentionally misled him in the weeks immediately preceding his departure, knowing that it would not pay him, so that he would not question his decision to elect severance.

### 2. *Reasonable, Detrimental Reliance*

Having found that Plaintiff's promissory fraud claim falls within the exception, we consider whether Plaintiff has adequately pled reliance on Defendant's alleged misrepresentations. Plaintiff alleges that he relied on Bronson's and Karl's statements—that Defendant would review his severance request and would timely respond—when proceeding with the decision to stop working. Plaintiff alleges that he did not truly "resign" but rather sought to exercise the severance option. (Am. Count IV ¶¶ 20–21, 24, 29–30, 33; Resp. at 15.) His June 23, 2013 letter stated that he wished to "exercise the option for the one year severance package" and does not refer to resignation or retirement. (*Id.* ¶ 20 & Ex. D.) Plaintiff explicitly pleads that Defendant understood this distinction and that he would have continued working had he known Defendant's intentions. (*Id.* ¶¶ 24–25, 28–30.)

Defendant argues that these allegations do not plead justifiable reliance because Plaintiff voluntarily elected to cease working *before* any misrepresentations were made. (Mem. at 8–9; Reply at 4–5.) We find, however, this argument overlooks Plaintiff's allegations about the contingent nature of his decision to seek severance. The parties interpret Plaintiff's June 23, 2013 letter differently—but both interpretations are plausible. We cannot say as a matter of law, as Defendant contends, that Plaintiff's letter constituted a firm resignation rather than a request for severance, which he might attempt to retract if Defendant denied the package. Plaintiff sufficiently alleges that his decision to give notice on June 23, 2013 was not final but was contingent on the pending approval of the severance request. As a result, his reliance on the

alleged misrepresentations was not inconsequential and, according to Plaintiff, proved detrimental.

Defendant does not directly argue that Plaintiff's reliance was otherwise unreasonable, but we address that issue briefly. It may or may not have been reasonable, for example, for Plaintiff to rely on Karl's alleged misrepresentation, particularly as his departure date approached. At some point between Karl's July 18, 2013 email and Plaintiff's actual departure date, it might have become prudent for Plaintiff to follow-up or independently investigate the status of his request, rather than blindly relying on Defendant's assertions. As mentioned earlier, reliance is typically a question of fact and requires us to "consider all of the facts that [Plaintiff] knew, as well as those facts [Plaintiff] could have learned through the exercise or ordinary prudence." *Cozzi Iron & Metal, Inc.*, 250 F.3d at 574. Based on the allegations before us, we cannot make this determination as a matter of law. *Id.* At this juncture, we find that Plaintiff has adequately alleged reliance and that these fact issues are appropriate to explore in discovery.

## CONCLUSION

For the reasons set forth above, Defendant's motion to dismiss Plaintiff's amended fraud claim is denied.

Plaintiff's amended complaint contained allegations related to Count IV only. Although the amended complaint did not reallege the additional claims raised in the original complaint, we will not assume that Plaintiff has voluntarily dismissed his other claims. On or by August 31, 2015, Plaintiff shall file an amended complaint, synthesizing the allegations of Counts I, II, and III of original complaint with the amended Count IV. Plaintiff shall not make any further additions or substantive changes. If Plaintiff fails to file this amended complaint as ordered, we will dismiss Counts I, II, and III. It is so ordered.

_____
Marvin E. Aspen
United States District Judge

Dated: July 20, 2015
        Chicago, Illinois